O

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| HOANG GIAN THAI, | Case No. SACV 15-00993-KES |
| Plaintiff, | MEMORANDUM OPINION AND ORDER |
| v. | |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security, | |
| Defendant. | |

Plaintiff Hoang Gian Thai ("Plaintiff") appeals the final decision of the Administrative Law Judge ("ALJ") denying his application for Social Security Disability Insurance benefits ("DIB").  For the reasons discussed below, the Court concludes that the ALJ erred at step two of the sequential evaluation process by failing to mention the opinions of treating source Dr. Ali relevant to the severity of Plaintiff's depression.  The ALJ's decision is therefore REVERSED and the matter is REMANDED for further proceedings consistent with this opinion.

/ / /

# I.

## BACKGROUND

Plaintiff applied for DIB on April 10, 2012, alleging the onset of disability on April 28, 2009, when he was thirty-eight years old. Administrative Record ("AR") 62, 155-56. On October 21, 2013, an ALJ conducted a hearing, at which Plaintiff, who was represented by an attorney, appeared and testified. AR 36-61.

On November 21, 2013, the ALJ issued a written decision denying Plaintiff's request for benefits. AR 16-31. The ALJ declined to find that Plaintiff had any severe mental impairments, but found that Plaintiff had the severe physical impairments of "status post bilateral carpal tunnel release; degenerative joint disease of the left ankle and shoulders bilaterally; rheumatoid arthritis; and lumbar degenerative disc disease." AR 21. Notwithstanding these physical impairments, the ALJ concluded that Plaintiff had the residual functional capacity ("RFC") to perform light work with the following additional limitations: "only occasionally climb ladders, ropes, scaffolds, ramps or stairs; frequent stooping, crouching and kneeling; occasional crawling; and frequent handling and fingering of objects." AR 25-26. Based on this RFC and the testimony of a vocational expert ("VE"), the ALJ found that Plaintiff could perform the jobs of inspector, packager, and bagger. AR 31. Thus, the ALJ found that Plaintiff was not disabled. AR 31.

# II.

## ISSUES PRESENTED

Issue No. 1: Whether the ALJ properly evaluated Dr. Ali's treating opinions regarding Plaintiff's mental functional capacity.

Issue No. 2: Whether the ALJ properly evaluated Dr. Ali's treating opinions regarding Plaintiff's physical functional capacity. See Dkt. 22, Joint Stipulation ("JS") at 4.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## III.

## DISCUSSION

**A.**  **The ALJ Erred by Failing to Mention Dr. Ali's Mental Functional Capacity Opinions at Step Two.**

    1.  **Summary of Dr. Ali's Opinions and Treatment Records.**

Plaintiff started visiting Dr. Mumtaz A. Ali at 4-6 week intervals for pain management in July 2009.  AR 340.  Dr. Ali is licensed in both neurology and psychiatry.  AR 337.

On January 15, 2013, Dr. Ali wrote a letter that he indicated would "serve as a substitute for the Mental Disorder Questionnaire Form" that he was asked to complete.  AR 337.  In that letter, Dr. Ali expressed some opinions about Plaintiff's mental health.  He opined that as a result of his chronic pain, Plaintiff "developed depression, anxiety and insomnia, and was referred for psychological evaluation and care."  AR 338.  He noted, however, that "a more definitive diagnosis is deferred to the appropriate mental health professional."  AR 338.  Nevertheless, he observed that Plaintiff "presents as a depressed individual" and that Plaintiff described his depression as "6/10 with 10 being the most severe."  AR 338.

Based on his observations and Plaintiff's self-reporting, Dr. Ali gave several opinions about how Plaintiff's depression limits his functionality relevant to his ability to work.  Dr. Ali opined that Plaintiff is "severely impaired" in his ability to "adapt to stresses common to the work environment" and "sustain focused attention."  AR 338.  Dr. Ali also opined that Plaintiff "would have difficulty with attendance, schedules, interacting with supervisors and decision-making."  AR 338.

Dr. Ali also provided several reports and treatment notes primarily addressing Plaintiff's physical impairments.  See AR 340-342 (1/16/13 report concluding Plaintiff would miss work more than four days per month); AR

619-22, 628-29, 640-42, 648-52, 658-94 (26 Neurological & Pain Management Narrative Progress Reports[1]); AR 623-27 (Workers' Compensation report dated 5/17/13); AR 630-32, 638-39 (Progress Reports dated 3/8/2013 and 2/1/13); AR 633-37, 643-47, 653-57 (Toxicology reports dated 2/14/13, 11/14/12 and 6/7/12); AR 695-703 (Initial Evaluation Report dated 7/14/09); AR 704-09 (Physical Residual Functioning Capacity Questionnaire dated 10/24/13).  While the focus of these treating records is pain management, they do refer to Plaintiff as exhibiting "major depression."  See, e.g., AR 619, 621, 628, 630, 638.

## 2. The ALJ's Step Two Analysis.

At step two of the sequential evaluation process, the ALJ determined that although Plaintiff suffers from the medically determinable condition of depression, his depression is "non-severe."  AR 21.  In reaching this conclusion, the ALJ said that he considered opinions from three doctors: (1) R.E. Brooks, a state agency psychiatric consultant who reviewed the medical evidence in Plaintiff's file, including Dr. Ali's January 2013 letter, and found only "mild" psychiatric functional limitations (AR 23 citing AR 79-81), (2) Halimah McGee, a consultative psychologist who examined Plaintiff and found "no evidence of cognitive or emotional limitations" (AR 23 citing AR 344), and (3) Cherie Carrera, a psychologist who evaluated Plaintiff in connection with his workers' compensation claim in 2011 (AR 23 citing AR 237).

At step two, the ALJ did not discuss any of Dr. Ali's opinions, including

---

[1] These 26 reports are dated 7/16/13, 5/21/13, 4/16/13, 12/20/12, 11/16/12, 10/19/12, 9/14/12, 8/7/12, 6/26/12, 5/29/12, 4/20/12, 3/26/12, 2/7/12, 1/6/12, 10/22/10, 9/24/10, 8/24/10, 7/20/10, 3/16/10, 2/16/10, 12/4/09, 10/30/09, 10/2/09, 9/8/09, 9/4/09, and 8/4/09.

his January 2013 letter opining that Plaintiff had multiple "severe" limitations due to his depression.

### 3.    The ALJ's Duties at Step Two.

The Secretary has established a five-step sequential evaluation process for determining whether a person seeking DIB is disabled.  20 CFR § 404.1520. At step two, the ALJ must determine whether the claimant has a medically determinable "severe" impairment or combination of impairments.  Id.  To evaluate the severity of alleged mental impairments in adults, ALJs "must follow" a "special technique" described by the regulations.  20 CFR § 404.1520a.  To use that technique, ALJs "must first evaluate [the claimant's] symptoms, signs and laboratory findings to determine whether [the claimant has] a medically determinable impairment(s)."  Id., ¶ (b)(1).  Upon determining that the claimant has a medically determinable impairment, the ALJ must then "rate the degree of functional limitation resulting from the impairment(s) in accordance with paragraph (c) …."  Id., ¶ (b)(2).  Paragraph (c) provides that rating the degree of functional limitation "requires [ALJs] to consider multiple issues and ***all relevant evidence*** to obtain a longitudinal picture of [the claimant's] overall degree of functional limitation."  Id., ¶ (c)(1), emphasis added.  Per regulation, the ALJ "will consider all relevant and available clinical signs and laboratory findings …."  Id.; see also 20 CFR § 404.1520(a)(3) ("We will consider all evidence in your case record when we make a determination or decision whether you are disabled.").

Based on all the evidence, the ALJ must rate the claimant's functional limitations in four areas:  (1) daily living, (2) social functioning, (3) concentration, persistence and pace, and (4) episodes of decompensation. Id., ¶ (c)(3).  The ratings must be either "none, mild, moderate, marked or extreme."  Id., ¶ (c)(4).  If a claimant receives a rating of "none" or "mild" in the first three areas and "none" in the fourth area, then his mental impairment

1  will be considered "not severe."  Id., ¶ (d)(1).

2       Finally, the ALJ must "document application of the technique in the

3  decision."  Id., ¶ (e).  The ALJ's written decision "must incorporate the

4  pertinent findings and conclusions based on the technique."  Id., ¶ (e)(4); see

5  also Garrison v. Colvin, 759 F.3d 995, 1012-1013 (9th Cir. 2014) ("Where an

6  ALJ does not explicitly reject a medical opinion or set forth specific, legitimate

7  reasons for crediting one medical opinion over another, he errs.")

8       **4.    The ALJ Failed to Consider Relevant Evidence at Step Two**

9           **and/or Document his Consideration of Such Evidence.**

10      Here, Dr. Ali opined that Plaintiff is "severely impaired" in his ability to

11 "sustain focused attention."  AR 338.  This opinion is clearly relevant to

12 evaluating Plaintiff's functional limitations in the area of concentration,

13 persistence and pace.  Per 20 CFR § 404.1520a ¶¶ (c)(1) and (e), in evaluating

14 the severity of Plaintiff's functional limitations in the area of concentration, the

15 ALJ was required to consider all relevant evidence and document his reasons

16 for crediting certain opinions while discounting others.  The ALJ, however,

17 found Plaintiff had only "mild" functional limits concerning concentration,

18 persistence and pace.  AR 22.  He arrived at this conclusion without discussing

19 Dr. Ali's January 2013 letter or giving any reasons for discrediting Dr. Ali's

20 opinions concerning Plaintiff's depression-related functional limitations.  The

21 ALJ, therefore, failed to follow the mandated technique for evaluating the

22 severity of Plaintiff's depression at step two.

23      **5.    The Court Cannot Conclude that the ALJ's Error was**

24          **Harmless.**

25      In Marsh v. Colvin, 792 F.3d 1170, 1172-73 (9th Cir. 2015), after citing

26 the general rule that when formulating an RFC, the "ALJ may reject a treating

27 source's opinion that is contradicted by another doctor's opinion only by

28 providing specific and legitimate reasons that are supported by substantial

evidence," the Ninth Circuit considered whether or not it would be appropriate to subject an ALJ's failure to mention a treating source to harmless error analysis.  The Ninth Circuit refused to hold that such an error could never be harmless, but suggested that it would rarely be harmless, as follows:

> We reject the idea that not mentioning a treating source's medical opinion precludes use of harmless error doctrine, but at the same time, because our law requires "specific and legitimate reasons that are supported by substantial evidence" for rejecting a treating source's medical opinion, that precedent surely implies that an ALJ must discuss the relevant views of a treating source.  Our precedents do not quantify the degree of certainty needed to conclude that an ALJ's error was harmless, and we would hesitate to suggest a rigid rule for all such cases. But it does seem that where the magnitude of an ALJ error is more significant, then the degree of certainty of harmlessness must also be heightened before an error can be determined to be harmless. In other words, the more serious the ALJ's error, the more difficult it should be to show the error was harmless.

Id. at 1173.

Having determined to engage in a harmless error analysis, the Ninth Circuit reiterated the standard for finding an error "harmless," as follows:

> ALJ errors in social security cases are harmless if they are inconsequential to the ultimate non-disability determination and … a reviewing court cannot consider an error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination.

Id., citations omitted.

The Commissioner urges the Court to find the ALJ's error harmless in this case for three reasons: (1) substantial evidence supports the ALJ's determination that Plaintiff's depression was not severe, (2) the ALJ gave "great weight" to Dr. Brooks' opinions, and he found Plaintiff's depression non-severe after reviewing Dr. Ali's records, and (3) the ALJ rejected the opinions of Dr. Carrera for reasons "equally applicable" to Dr. Ali. JS 12-14.

In support of the first reason, the Commissioner cites <u>Hamilton v. Comm'r Soc. Sec. Admin.</u>, 368 F. App'x 724, 726 (9th Cir. 2010) for the premise that "an ALJ's error in rejecting a treating physician's disability assertion was harmless because the ALJ's findings contain numerous other valid reasons for rejecting a conclusion that the claimant was disabled and could not work." JS 12. The facts in <u>Hamilton</u>, however, are unlike those of the instant case. In <u>Hamilton</u>, the only opinion by the treating source that the ALJ failed to address was an ultimate opinion that the claimant "is disabled and in no way will be able to be gainfully employed in any endeavor in the near future." <u>Id.</u> at 725. The ultimate decision concerning disability is always reserved to the ALJ. <u>See</u> <u>Tonapetyan v. Halter</u>, 242 F.3d 1144, 1148 (9th Cir. 2001) (noting that even a treating physician's opinion is not binding on the ultimate determination of disability). Thus, ALJs can ignore such ultimate opinions when offered by medical sources without explicitly stating a reason for doing so. In such cases, the ALJ's analysis is legally sufficient if it states specific and legitimate reasons for concluding that the claimant is capable of work activity. <u>Id.</u> at 726.

In support of the second reason, the Commissioner cites <u>Rogal v. Colvin</u>, 590 F. App'x 667, 670-71 (9th Cir. 2014) for the premise that "an ALJ committed harmless error in evaluating a physician's opinion where the ALJ afforded significant weight to another physician's opinion, which relied on the first physician's opinion." JS 13. Again, however, <u>Rogal</u> is distinguishable.

8

In Rogal, the ALJ "did not expressly state what weight she assigned" to the opinion of a particular doctor, Dr. Dixon. Rogal, 590 F. App'x at 670. The Ninth Circuit concluded that if this was error, it was harmless, because "the ALJ thoroughly discussed Dr. Dixon's opinion and gave significant weight to Dr. Gollogly's opinion, which relied on Dr. Dixon's opinion." Id. at 670-71. Here, the ALJ did not mention Dr. Ali's mental health opinions, let alone "thoroughly discuss" them. The ALJ did not effectively credit Dr. Ali's opinions by giving "great weight" to Dr. Brooks' opinions, because Dr. Brooks, although he reviewed Dr. Ali's treatment records, disagreed with Dr. Ali concerning the severity of Plaintiff's functional limitations caused by his depression.

In support of the third reason, the Commissioner cites Zettelmier v. Astrue, 387 F. App'x 729, 731-32 (9th Cir. 2010) for the premise that "the ALJ's failure to address one physician's report was harmless because another physician's report, which the ALJ addressed, provided a proper basis to discredit the first physician's conclusions." JS 13. Here, however, the ALJ afforded Dr. Carrera's opinion "little weight" because it was rendered in February 2011 and that since that time, Plaintiff "has treated his depressive disorder with anti-depressants medications that are noted as working to control his symptoms." AR 23, citing AR 237. Dr. Ali's opinion that Plaintiff has severe, depression-related functional limitations, however, was rendered in January of 2013. AR 337. Thus, the ALJ's stated reason for discrediting Dr. Carrera's opinion is not necessarily "equally applicable" to Dr. Ali's opinion.

Given the very high standard for declaring error harmless, the Court cannot conclude that the ALJ's failure to discuss Dr. Ali's mental health opinions at step two was harmless. Had the ALJ "fully credited" Dr. Ali's testimony, he might have reached a different determination at step two. Marsh, 792 F.3d at 1173.

**B.**     <u>Remand For Further Proceedings Is Appropriate.</u>

When an ALJ errs in denying benefits, the Court generally has discretion to remand for further proceedings.  <u>See</u> <u>Harman v. Apfel</u>, 211 F.3d 1172, 1175-78 (9th Cir. 2000) (as amended).  On remand, the ALJ must give specific and legitimate reasons for discounting Dr. Ali's opinions regarding Plaintiff's depression-related functional limitations at step two of the sequential analysis.

Because the Court concludes that the ALJ erred at step two, the Court does not decide whether the remaining issue raised in the Joint Stipulation would independently warrant relief.  Upon remand, the ALJ may wish to consider Plaintiff's other claim of error.

## IV.

## CONCLUSION

For the reasons stated above, IT IS HEREBY ORDERED that, pursuant to sentence four of 42 U.S.C. § 405(g), judgment be entered REVERSING the decision of the Social Security Commissioner and REMANDING this matter for further proceedings consistent with this opinion.

Dated: <u>May 12, 2016</u>

*Karen E. Scott*
_____
KAREN E. SCOTT
United States Magistrate Judge

10